1  Kelly M. Dermody (Cal. Bar No. 171716)
   Jahan C. Sagafi (Cal. Bar No. 224887)
2  Anne B. Shaver (Cal. Bar No. 255928)
   Jaron R. Shipp (Cal. Bar No. 264401)
3  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
4  San Francisco, CA  94111-3339
   Telephone:  (415) 956-1000
5  Facsimile:   (415) 956-1008
   E-Mail: kdermody@lchb.com
6  E-Mail: jsagafi@lchb.com
   E-Mail: ashaver@lchb.com
7  E-Mail: jshipp@lchb.com

8  *Attorneys for Plaintiffs and Class Members*

9  *[Additional Counsel on Signature Page]*

10

11                    UNITED STATES DISTRICT COURT

12                    NORTHERN DISTRICT OF CALIFORNIA

13                           SAN JOSE DIVISION

14

15  MATTHEW BUCCELLATO, RICK            No.  C10-00463-LHK
    CORTES, RICHARD MALCONTENTO,
16  KENNETH CARLTON, and LOWELL         **NOTICE OF MOTION AND UNOPPOSED
    HILL, on behalf of themselves and classes   MOTION FOR ORDER (1)
17  of those similarly situated,          CONDITIONALLY CERTIFYING
                                          SETTLEMENT CLASS AND
18            Plaintiffs,                 COLLECTIVE ACTION, (2) GRANTING
                                          PRELIMINARY APPROVAL TO
19         v.                             PROPOSED CLASS ACTION
                                          SETTLEMENT AND PLAN OF
20  AT&T OPERATIONS, INC.,                ALLOCATION, (3) DIRECTING
                                          DISSEMINATION OF CLASS NOTICE TO
21            Defendant.                  CLASS; AND (4) SETTING FINAL
                                          APPROVAL HEARING DATE AND
22                                        RELATED DATES; MEMORANDUM IN
                                          SUPPORT OF MOTION**

23                                        Date:        February 17, 2011
                                          Time:        1:30 p.m.
24                                        Courtroom:   4, 5th floor
                                          Judge:       Hon. Lucy H. Koh

25

26

27

28

1

**NOTICE OF MOTION AND MOTION**

2        PLEASE TAKE NOTICE that on February 17, 2011, at 1:30 p.m., or as soon thereafter as

3   the matter may be heard, in Courtroom 4 of this Court, located at 280 South First Street, San Jose,

4   California, Plaintiffs Matthew Buccellato, Kenneth Carlton, Rick Cortes, Lowell Hill, and

5   Richard Malcontento ("Plaintiffs") will, and hereby do, move this Court for the following relief

6   with respect to their Stipulation of Class Settlement and Settlement Agreement (the "Settlement,"

7   attached as Exhibit 1 to the Declaration Of Jahan C. Sagafi In Support Of Plaintiffs' Motion For

8   Preliminary Approval Of Class Action Settlement ("Sagafi Declaration")) with Defendant AT&T

9   Operations, Inc. ("AT&T"):

10        1.    that the Court certify for settlement purposes only the following state-law

11   settlement classes (the "State Classes") pursuant to Federal Rule of Civil Procedure 23:

12             a.    a California state-law class consisting of all current and former AT&T

13   employees who are or were employed in Covered Positions[1] in California at any time during the

14   Covered Period;

15             b.    a Colorado state-law class consisting of all current and former AT&T

16   employees who are or were employed in Covered Positions in Colorado at any time during the

17   Covered Period;

18             c.    a New Jersey state-law class consisting of all current and former AT&T

19   employees who are or were employed in Covered Positions in New Jersey at any time during the

20   Covered Period;

21             d.    a New York state-law class consisting of all current and former AT&T

22   employees who are or were employed in Covered Positions in New York at any time during the

23   Covered Period; and

24

25

26

27   [1] The Covered Positions are Business Manager IT, Project Manager IT, Senior IT Analyst, Senior Project/Program Manager IT, Technical Architect, and Technical Design Engineer, as well as other positions, as defined in the Settlement, § I.K.

28

1          e.        a North Carolina state-law class consisting of all current and former AT&T

2   employees who are or were employed in Covered Positions in North Carolina at any time during

3   the Covered Period.

4          2.        that the Court designate for settlement purposes only this action a nationwide

5   FLSA collective action pursuant to 29 U.S.C. section 216(b);

6          3.        that the Court appoint Plaintiffs as class representatives of the respective state-law

7   Classes and as representative Plaintiffs for the nationwide collective action;

8          4.        that the Court appoint Plaintiffs' attorneys as Class Counsel;

9          5.        that the Court grant preliminary approval of the Settlement;

10         6.        that the Court approve mailing to the Class Members the proposed Class Notice

11  and Claim Form;

12         7.        that the Court approve the notice of the Settlement sent to the Attorney General of

13  the United States and the responsible state officials;

14         8.        that the Court appoint Settlement Services, Inc., as the Settlement Administrator;

15         9.        that the Court schedule a hearing for final approval of the Settlement.

16         This motion is made on the grounds that the Settlement is the product of arms-length,

17  good-faith negotiations; is fair, reasonable, and adequate to the Class; and should be preliminarily

18  approved, as discussed in the attached memorandum.  This motion is made in accordance with the

19  schedule set forth in the Court's Order of January 10, 2011, Docket No. 49.

20         The motion is based on this notice, the following memorandum in support of the motion,

21  the Sagafi Declaration (which includes a copy of the Settlement); the Court's record of this

22  action; all matters of which the Court may take notice; and oral and documentary evidence

23  presented at the hearing on the motion.

24         This motion is unopposed by Defendant AT&T.

25

26

27

28

1                         Respectfully submitted,

2   Dated:  January 13, 2011       By: _____ /s/ *Jahan C. Sagafi* _____
                                       Jahan C. Sagafi

3

4                         Kelly M. Dermody (Cal. Bar No. 171716)
                        Jahan C. Sagafi (Cal. Bar No. 224887)

5                         Anne B. Shaver (Cal. Bar No. 255928)
                        Jaron R. Shipp (Cal. Bar No. 264401)

6                         LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                        275 Battery Street, 29th Floor

7                         San Francisco, CA  94111-3339
                        Telephone:  (415) 956-1000

8                         Facsimile:   (415) 956-1008
                        E-Mail: kdermody@lchb.com

9                         E-Mail: jsagafi@lchb.com
                        E-Mail: ashaver@lchb.com

10                        E-Mail: jshipp@lchb.com

11                        Adam T. Klein (admitted *pro hac vice*)
                       Justin M. Swartz (admitted *pro hac vice*)

12                        Rachel M. Bien (admitted *pro hac vice*)
                       OUTTEN & GOLDEN LLP

13                        3 Park Avenue, 29th Floor
                       New York, New York 10016

14                        Telephone: (212) 245-1000
                       Fax: (212) 977-4005

15                        E-Mail: atk@outtengolden.com
                       E-Mail: jms@outtengolden.com

16                        E-Mail: rmb@outtengolden.com

17                        *Attorneys for Plaintiffs and the proposed Class*

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM IN SUPPORT OF MOTION................................................................. 1

I.     INTRODUCTION ........................................................................... 1

II.    FACTS ........................................................................................... 1

    A.   The Parties' Claims And Defenses ........................................... 1

    B.   The Settlement Class................................................................. 3

    C.   Class Counsel ............................................................................ 3

    D.   Status Of The Litigation Prior To Settlement ........................... 4

    E.   Settlement Negotiations ............................................................ 4

    F.   Terms Of The Settlement .......................................................... 5

        1.   Monetary Relief to Class Members................................. 5

        2.   Plan of Allocation .......................................................... 5

        3.   Additional Payments ...................................................... 7

III.   ARGUMENT ................................................................................. 8

    A.   Class Certification Is Appropriate............................................ 8

    B.   The Prerequisites Of Rule 23(a) Are Satisfied......................... 8

        2.   The Prerequisites of Rule 23(b) Are Also Satisfied..................... 11

        3.   Rule 23(g) is satisfied.................................................. 12

    C.   The FLSA Class Satisfies 29 U.S.C. § 216(b) ........................ 13

    D.   The Settlement Is Non-Collusive And Falls Well Within The Range of Possible Judicial Approval........................................ 14

IV.   THE PROPOSED NOTICE SATISFIES DUE PROCESS ................. 15

V.    PROPOSED SCHEDULING ORDER .............................................. 18

VI.   CONCLUSION ............................................................................. 18

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4
5

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997) ..................................................................................................... 10, 11

6

*Ansoumana v. Gristede's Operating Corp.,*
   201 F.R.D. 81 (S.D.N.Y. 2001) ............................................................................................ 12

7
8

*Blackie v. Barrack,*
   524 F.2d 891 (9th Cir. 1975) ................................................................................................. 9

9

*Churchill Village, L.L.C. v. General Electric,*
   361 F.3d 566 (9th Cir. 2004) ............................................................................................... 15

10
11

*Damassia v. Duane Reade, Inc.,*
   250 F.R.D. 152 (S.D.N.Y. 2008) ......................................................................................... 12

12

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) ............................................................................................................. 15

13
14

*Gautreaux v. Pierce,*
   690 F.2d 616 (7th Cir. 1982) ............................................................................................... 14

15

*Gerlach v. Wells Fargo & Co.,*
   No. 05-0585, 2006 WL 824652 (N.D. Cal. March 28, 2006) ............................................. 13

16
17

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ..................................................................................... 8, 9, 10, 11

18

*Heffelfinger v. Elec. Data Sys. Corp.,*
   No. CV 07-00101 MMM, 2008 U.S. Dist. LEXIS 5296 (C.D. Cal. Jan. 7, 2008) ............. 12

19
20

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,*
   163 F.R.D. 200 (S.D.N.Y. 1995) ......................................................................................... 14

21

*In re Tableware Antitrust Litig.,*
   484 F.Supp.2d 1078 (N.D. Cal. 2007) ................................................................................. 14

22
23

*In re Vitamins Antitrust Litig.,*
   No. 99-197, 2001 WL 856292 (D.D.C. July 25, 2001) ....................................................... 14

24

*McNamara v. Bre-X Minerals Ltd.,*
   214 F.R.D. 424 (E.D. Tex. 2002) ......................................................................................... 14

25
26

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,*
   221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................................... 14

27

*Paul, Johnson, Alston & Hunt v. Graulty,*
   886 F.2d 268 (9th Cir. 1989) ................................................................................................. 8

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Scholtisek v. Eldre Corp.*,
    229 F.R.D. 381 (W.D.N.Y. 2005) .................................................................. 13

*Six Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ................................................................... 7, 8

*Tierno v. Rite Aid Corp.*,
    No. C 05-02520 TEH, 2006 WL 2535056, 2006 U.S. Dist. LEXIS 71794
    (N.D. Cal. Aug. 31, 2006) ......................................................................... 12

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ..................................................................... 8

*Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*,
    No. 05-2320, 2006 WL 2642528 (N.D. Cal. Sept. 14, 2006) ........................... 8

**STATUTES**

28 U.S.C. § 1715 ............................................................................................ 15

29 U.S.C. § 216(b) .......................................................................................... 13

**RULES**

Fed. R. Civ. P. 23(a)(1) .................................................................................... 8

Fed. R. Civ. P. 23(a)(2) .................................................................................... 9

Fed. R. Civ. P. 23(a)(3) .................................................................................. 10

Fed. R. Civ. P. 23(a)(4) .................................................................................. 10

Fed. R. Civ. P. 23(b)(3) .................................................................................. 11

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................. 15

Fed. R. Civ. P. 23(e) ...................................................................................... 14

Fed. R. Civ. P. 23(e)(1)(B) .............................................................................. 15

Fed. R. Civ. P. 23(g)(1)(A) .............................................................................. 13

**TREATISES**

4 Newberg, § 11.25 ........................................................................................ 15

7A Wright, Miller & Kane, *Fed. Prac. & Proc.*
    § 1778 (2d ed. 1986) ................................................................................. 11

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*,
    § 11.41 (4th ed. 2006) ............................................................................... 14

1

### TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Manual for Complex Litigation, Fourth* (Federal Judicial Center 2004)
§ 21.632.................................................................................................................... 15

4

*Manual for Complex Litigation, Third* (Federal Judicial Center 1995).................................. 14, 15

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM IN SUPPORT OF MOTION**

## I.    INTRODUCTION

After significant investigation and discovery, and notwithstanding their adversarial positions in this matter, Plaintiffs Matthew Buccellato, Kenneth Carlton, Rick Cortes, Lowell Hill, and Richard Malcontento ("Plaintiffs") and Defendant AT&T Operations, Inc. ("AT&T") (collectively, the "Parties"), negotiated a $12.5 million claims-made settlement of this litigation on behalf of approximately 816 AT&T employees.  Declaration of Jahan C. Sagafi in Support of Motion for Preliminary Approval of Class Settlement ("Sagafi Decl."), ¶18.  The anticipated recovery per class member is more than $11,000.  *Id.*  The terms of the proposed settlement are set forth in the proposed Stipulation of Class Settlement and Settlement Agreement ("Settlement") filed as Exhibit 1 to the Sagafi Declaration.

The proposed settlement class meets the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3), which are applicable to class settlements, and section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), which authorizes collective actions.  Accordingly, Plaintiffs request certification of state-law classes under Rule 23 and a nationwide collective action under 29 U.S.C. § 216(b).

The Settlement is the product of arms-length negotiations between the Parties and falls within the range of reasonableness such that notice to the class is appropriate.  Sagafi Decl., ¶¶19-20.  The Notice to be sent to the class members provides them with the best notice practicable under the circumstances and will allow each class member a full and fair opportunity to evaluate the Settlement and decide whether to participate.

Accordingly, this Court should grant preliminarily approval to the Settlement, approve the form and proposed manner of distribution of the Class Notice and Claim Form, and schedule a hearing for final approval of the Settlement consistent with the time frame set forth in this motion.

## II.    FACTS

### A.    The Parties' Claims And Defenses

AT&T is a telecommunications company providing phone, data, and network support services throughout the United States and the world.  Plaintiffs and the settlement class are

1    current and former AT&T technical support workers whose primary duty is to install maintain,

2    and/or support computer hardware and/or software for AT&T and its customers.  They all worked

3    in AT&T's Blue Sky Group in one of the following six positions:  (1) Business Manager IT,

4    (2) Project Manager IT, (3) Senior IT Analyst, (4) Senior Project/Program Manager IT,

5    (5) Technical Architect, and (6) Technical Design Engineer (collectively the "Covered

6    Positions").[2]

7         Plaintiffs contend that AT&T misclassified the Class Members as exempt from the

8    overtime requirements of the FLSA and the wage and hour laws of California, Colorado, New

9    Jersey, New York, and North Carolina.  *See* Second Amended Complaint ("SAC"), ¶8, Docket

10   No. 45.  Plaintiffs further assert that, due to this alleged misclassification, AT&T violated the

11   Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.  Id.*, ¶¶15-18.

12   Specifically, Plaintiffs contend that certain ERISA-covered benefit plans in which they

13   participated required AT&T to provide employees with benefit credits based upon their

14   compensation earned. *Id.*, ¶178.

15        At all points during this litigation, AT&T disputed, and it continues to dispute, Plaintiffs'

16   allegations, expressly denying any liability for any of the claims that Plaintiffs or the Class has

17   raised or could have raised.  *See generally* Answer to Second Amended Complaint, Docket No.

18   47.

19        Plaintiffs' counsel have analyzed and evaluated the merits of Plaintiffs' claims and the

20   impact of the Settlement on Plaintiffs and the Class.  Sagafi Decl., ¶20.  While Plaintiffs' counsel

21   believe that Plaintiffs' claims are meritorious, that Plaintiffs would eventually prevail in

22   certifying this case as a collective action and a class action, and that Plaintiffs would prevail on

23   the merits of their claims, Plaintiffs' counsel have also considered factors such as the substantial

24   risks of continued litigation and the possibility that the case, if not settled now, might not result in

25   any recovery or might result in a recovery several years from now that is less favorable to Class

26   ---
     [2] In addition, to the extent that Class Members holding any of those job titles were subsequently
27   moved to new job titles solely as a result of the Technical Career Pathway ("TCP") project, their
     TCP titles are deemed Covered Positions, such that their weeks worked in those job titles are
     included in the Settlement.

28

1   than that offered by the Settlement.  *Id.*  In light of such considerations, Plaintiffs' counsel are

2   satisfied that the terms and conditions of the Settlement are fair, reasonable, and adequate, and

3   that the Settlement is in the best interests of the Class.  *Id.*

4          **B.      The Settlement Class**

5          As part of the Settlement, AT&T agreed to certification of the Settlement Class, which

6   comprises all persons who work or worked for AT&T in a Covered Position during the Covered

7   Period.  There are five state-law opt-out classes under Rule 23 (comprising all persons satisfying

8   the class definition who worked in California, Colorado, New Jersey, New York, and North

9   Carolina), as well as a nationwide opt-in class under the FLSA.

10         The term "Covered Position" means one or more of the following titles held by an

11  individual working for AT&T in the United States during the Covered Period:  Business Manager

12  IT, Project Manager IT, Senior IT Analyst, Senior Project/Program Manager IT, Technical

13  Architect, and Technical Design Engineer.  Settlement, § I.K.  In addition, as described in

14  footnote 2, above, and in the Settlement Agreement, § I.K., Covered Position includes TCP job

15  titles as well.

16         The term "Covered Period" means the period from February 1, 2008 to the date the

17  Preliminary Approval Order is entered by the Court, because all class members became employed

18  by AT&T on February 1, 2008 at the earliest.  Settlement, § J.

19         There are approximately 816 Class Members.  Sagafi Decl., ¶19.  They are readily and

20  individually identifiable from AT&T's payroll records.  Sagafi Decl., ¶21.

21         **C.      Class Counsel**

22         Plaintiffs in this matter are represented by Kelly M. Dermody, Jahan C. Sagafi, Jaron R.

23  Shipp, and Anne B. Shaver of Lieff, Cabraser, Heimann & Bernstein, LLP and Adam T. Klein,

24  Justin M. Swartz, Rachel M. Bien, and Jennifer Liu of Outten & Golden LLP (collectively "Class

25  Counsel").

26         Class Counsel have extensive experience in prosecuting and litigating large-scale wage

27  and hour collective and class actions such as this.  Sagafi Decl., ¶¶6-9 & Ex. 2.  Class Counsel

28  have the resources to effectively prosecute the Action.  *Id.*, ¶17.  Class Counsel have conducted

1   extensive investigation of this case, reviewing over 1,000 pages of documents produced by

2   AT&T, reviewing data on potential class members, and interviewing approximately one hundred

3   class members regarding their job duties and overtime hours.  *Id.*, ¶13.

4       **D.      Status Of The Litigation Prior To Settlement**

5           The Parties have engaged in a significant exchange of targeted information.  Plaintiffs

6   propounded discovery requests on May 7, 2010, the day of their Rule 26(f) Conference.  Sagafi

7   Decl., ¶13.  In the course of this discovery, Plaintiffs obtained written and testimonial evidence

8   regarding: (1) Class Members' employment with AT&T; (2) AT&T's compliance with the FLSA,

9   state wage and hour laws, and ERISA; (3) AT&T policies and procedures regarding the

10  company's classification of Class Members; (4) company policies and practices regarding

11  recording of hours worked by Class Members; (5) the Class Members' job duties; and (6) formal

12  and informal training received by Class Members regarding how to perform their job tasks,

13  assignments, duties, and functions; and (7) hours worked and compensation paid to potential

14  Class Members.  *Id.*, ¶¶13-14.  In total, AT&T produced over 1,000 pages of documents,

15  including job descriptions and other documents related to job duties and responsibilities, company

16  procedures, and documents related to job positions and company classification decisions.  *Id.*,

17  ¶13.  In addition, AT&T produced several iterations of spreadsheets containing data regarding

18  Class Member job titles, states of work, compensation, and weeks worked.  *Id.*, ¶14.  In addition,

19  Plaintiff Buccellato produced initial disclosures.  *Id.*, ¶15.

20          AT&T conducted discovery regarding Plaintiffs' claims.  Sagafi Decl., ¶15.  Plaintiffs

21  provided written responses to numerous requests for production of documents, and produced over

22  300 pages of documents.  *Id.*

23      **E.      Settlement Negotiations**

24          After conducting discovery, the Parties participated in a private mediation with

25  experienced mediator David A. Rotman of the San Francisco firm of Gregorio, Haldeman, Piazza,

26  Rotman, Frank & Feder LLP.  Sagafi Decl., ¶18.  Prior to this mediation, both Parties exchanged

27  detailed mediation briefs that included their respective assessments of the case and appendices

28  containing several hundred pages of supporting documentation and evidentiary materials.  *Id.*

Plaintiffs' mediation brief included exhibits with their damages analysis and the assumptions underlying them. *Id.*

The Parties' mediation took place on November 15, 2010. *Id.*, ¶18. At the conclusion of this session, the Parties reached a settlement in principle. *Id.*, ¶19. Thereafter, the Parties continued their arms-length negotiations to finalize the Settlement. *Id.*

### F. Terms Of The Settlement

#### 1. Monetary Relief to Class Members

Each Class Member who submits a timely and valid claim form is eligible to receive a share of the $12.5 million settlement fund based upon a formula described below. Settlement, § XIII.A.2. The net average recovery per class member—after deductions for the Class Representative Payments, the Class Counsel's Attorneys' Fees and Costs Payment, the $25,000 payment to the California Labor Workforce Development Agency, employer taxes on settlement shares, and the costs of claims administration—will be more than $11,000. Sagafi Decl., ¶19. If not all Class Members submit claims, the unclaimed funds will be retained by AT&T.

To maximize participation, the Settlement Agreement commits the parties to engage in extensive outreach to the Class Members to ensure maximum participation, and it comports with state-of-the-art best practices regarding notice and claim administration to make participation as easy as possible for the Class Members. For example, Notice packets are being redundantly disseminated by mail and e-mail, the Settlement Administrator will contact Class Members who are slow to submit Claim Forms with postcard reminders and additional outreach before the claim submission deadline, and information will be available by toll-free number and website.

#### 2. Plan of Allocation

The Settlement includes a proposed plan of allocation, based on a formula carefully designed to fairly compensate Class Members. Sagafi Decl., ¶20. Each Class Member who properly submits a claim form (a "Participating Class Member") will receive a share of the settlement fund. Settlement, § XIII.A.2. The calculation of each Class Member's settlement share will be based on his or her number of compensable workweeks and two additional factors: the state in which the Class Member worked and whether the annualized total compensation for

1    each Class Member was below or above $100,000.  *Id.*  Those two factors will result in one of

2    three multipliers, which will be used to convert each compensable work into an adjusted

3    compensable work week.  The multipliers shall apply as follows: (a) a 6x multiplier for weeks

4    worked in California (accounting for the more protective legal standard under California law and

5    the fact that employers are clearly prohibited from using the fluctuating workweek damages

6    calculation method); (b) a 3x multiplier for weeks worked outside of California during which the

7    Class Member's annualized total compensation was less than $100,000 (accounting for the

8    possibility that the employer might be able to make use of the fluctuating workweek method of

9    damages calculation); and (c) a 1x multiplier for weeks worked outside of California during

10   which the Class Member's annualized total compensation was greater than or equal to $100,000

11   (accounting for the possibility that non-California Class Members asserting FLSA claims might

12   fall within the highly paid professional exemption).  *Id.*, § XIII.A.2.b.

13          Because Plaintiffs' class claims seek the recovery of both wages and penalties, half of the

14   settlement shares will be deemed payment in settlement of wage claims (from which payroll

15   withholding and deductions will be taken) and half of the settlement shares will be deemed

16   payment in settlement of claims for interest and penalties (from which no withholding or

17   deductions will be taken).  *Id.*, § XII.A.3.  The employer's share of taxes on the wage payments

18   will be paid by AT&T separately.  *Id.*, § I.S.  The Settlement also provides for $25,000 to be paid

19   to the California Labor Workforce Development Agency ("LWDA") as the LWDA's share of the

20   settlement of the Class's claims for statutory penalties under the California Labor Code pursuant

21   to the Labor Code Private Attorneys General Act of 2004 ("PAGA").  Settlement, § XIII.A.1.d.

22          After Settlement Share checks are mailed to Class Members who submit Claim Forms, the

23   Settlement Administrator will contact those who delay in cashing the checks, to remind them to

24   do so.  If any Class Members fail to cash their checks, the aggregate value of those checks (the

25   "Uncashed Remainder") will be redistributed *pro rata* to the remaining participating Class

26   Members if the Uncashed Remainder exceeds $50,000.  If the Uncashed Remainder does not

27   exceed $50,000, it will be donated in the name of the "*Buccellato v. AT&T Operations, Inc.* Class

28   Action Settlement Fund," 50 percent (50%) to the Legal Aid Society of San

Francisco/Employment Law Center, and 50 percent (50%) to the Bar Association of San Francisco Volunteer Legal Services Project.  Settlement, § XIII.B.1.  These charitable non-profit organizations promote employment rights, a goal consonant with that of this litigation.  They are therefore proper beneficiaries under accepted cy pres principles.  *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990).

### 3.   Additional Payments

#### a.   Class Representative Service Payment

Fourteen days prior to the deadline for Class Members to object to the Settlement, Plaintiffs' counsel will apply to the Court for a Class Representative Payment of up to $20,000 for Matthew Buccellato, as compensation for his services as the lead class representative, and Class Representative Payments of up to $5,000 each for the other class representatives.  Settlement, § IX.B.  These amounts will be separate and apart from any other recovery to which plaintiffs will be entitled under the Settlement as Class Members.  *Id.*  These payments are intended to recognize (a) the time and effort that Plaintiffs have expended on behalf of the Class in assisting Class Counsel with the prosecution of their and the Class Members' claims and the consequent value they have conferred to the Class Members, (b) the exposure and risk they incurred by taking a leadership role in the litigation, and (c) the broader releases they are agreeing to in the Settlement.

#### b.   Class Counsel Attorneys' Fees and Costs Payment

Seven days prior to the deadline for Class Members to object to the Settlement, Plaintiffs' counsel will petition the Court for the Class Counsel Attorneys' Fees and Costs Payment in an amount equaling not more than 25% of the settlement fund for attorneys' fees plus not more than $50,000 for costs and expenses.  Settlement, § IX.C.  In litigating this matter, Plaintiffs' counsel interviewed approximately one hundred Class Members and witnesses, reviewed thousands of pages of documents produced by witnesses and AT&T, including documents regarding Class Member job duties, the classification decision, and AT&T's organization, procedures, and policies; assisted 50 Class Members in preparing sworn witness statements; and otherwise aggressively pursued the case.  Sagafi Decl., ¶13.

1    The compensation sought for Class Counsel—25% of the common fund created by their

2    efforts—is consistent with the Ninth Circuit's standard benchmark of 25% as fair and reasonable

3    for a common fund attorneys' fee award.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th

4    Cir. 2002); *Six Mexican Workers*, 904 F.2d at 1311; *Paul, Johnson, Alston & Hunt v. Graulty,*

5    886 F.2d 268, 272 (9th Cir. 1989).

6    **III.    ARGUMENT**

7    **A.    Class Certification Is Appropriate**

8    When confronted with a request for certification of a settlement class, the court's

9    "threshold task is to ascertain whether the proposed settlement class satisfies the requirements of

10    Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely:

11    (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."  *Hanlon v.*

12    *Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "In addition . . . the parties seeking class

13    certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2), or

14    (3)."  *Id.* at 1022.

15    **B.    The Prerequisites Of Rule 23(a) Are Satisfied**

16    **a.    Rule 23(a)(1):  the Numerosity Requirement is Satisfied**

17    The first requirement of Rule 23(a) is that the class be so numerous that joinder of all

18    members would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, "'[i]mpracticable' does not

19    mean 'impossible,' and a plaintiff only need establish the difficulty or inconvenience of joining

20    all members of the class to meet the numerosity requirement."  *Whiteway v. FedEx Kinko's*

21    *Office & Print Servs., Inc.*, No. 05-2320, 2006 WL 2642528, at *4 (N.D. Cal. Sept. 14, 2006)

22    (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)).

23    Although there is no "magic number" necessary to satisfy numerosity, and "a court must examine

24    the specific facts of each case to determine whether numerosity has been satisfied," it is generally

25    held that "numerosity may be presumed at a level of forty members."  *Id.* at *4 & n.3.

26    In this case, the Class includes approximately 816 employees, all of whom are readily

27    identifiable from AT&T's payroll records.  Sagafi Decl., ¶18.  Therefore, numerosity is readily

28    satisfied.

b.      **Rule 23(a)(2):  the Commonality Requirement is Satisfied**

Rule 23(a) also requires that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  In the Ninth Circuit, this requirement "has been construed permissively."  *Hanlon*, 150 F.3d at 1019.  Specifically, "[a]ll questions of fact and law need not be common to satisfy the rule."  *Id.*  "Factual variations or individual differences concerning damages, for example, will generally not defeat commonality."  *Whiteway*, 2006 WL 2642528, at *4 (citing *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).

Several common questions of fact and law exist, including:

1.      whether and how AT&T corporate policies and procedures limit Class Member discretion and standardize their work;

2.      whether and how AT&T uses change control systems to prevent Class Members from exercising independent judgment and discretion;

3.      whether and how AT&T uses work assignment systems to create tickets to assign work to Class Members and track their progress on assignments;

4.      whether and how AT&T uses Service Level Agreements to determine Class Member duties, limit their discretion, and enforce measurable productivity requirements;

5.      whether AT&T can satisfy the requirements of the administrative exemption under the state laws of California, Colorado, New Jersey, New York, and North Carolina;

6.      whether AT&T can satisfy the requirements of the computer professional exemption under the state laws of California, Colorado, New Jersey, New York, and North Carolina;

7.      if AT&T improperly classified Class Members as exempt, whether this was done knowingly;

8.      whether the fluctuating workweek method of damages calculation was available to AT&T outside of California; and

9.      whether the challenged practices violated ERISA.

These issues satisfy commonality for purposes of Fed. R. Civ. P. 23(a)(2).

1

### c.  Rule 23(a)(3):  the Typicality Requirement Is Satisfied

Rule 23 also requires that the "claims or defenses of the representative parties [be] typical

of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  As a general matter, the

typicality analysis "tends to merge" with the commonality analysis.  *Whiteway*, 2006 WL

2642528 at *6 (citing *General Telephone Co. Of the Southwest v. Falcon*, 457 U.S. 147, at 158 n.

13 (1982)).  Like Rule 23(a)(2), Rule 23(a)(3) establishes a "permissive" standard.  *Hanlon,*

150 F.3d at 1020.  Typicality, however, focuses on "focuses on the similarity between the lead

plaintiffs' legal theories and those of the people he or she purports to represent."  *Whiteway*, 2006

WL 2642528, at *6 (citing *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1998)).

Typicality is established if "representative claims are . . . reasonably co-extensive with those of

absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs' claims arise out of the same type of factual and legal circumstances

surrounding the claims of each Class Member.  Plaintiffs perform the same duties as Class

Members, and they allege the same injury—*i.e.*, that they were misclassified as exempt and that

AT&T improperly withheld benefit credits from them under certain ERISA-governed plans.  As

such, the typicality requirement of Rule 23(a)(3) is satisfied.

### d.  Rule 23(a)(4):  the Adequacy of Representation Requirement is Satisfied

Rule 23 also requires that the class representative fairly and adequately protects the

interests of the class.  Fed. R. Civ. P. 23(a)(4).  This requirement is grounded in "due process

concerns," as class members are constitutionally entitled to "adequate representation before entry

of a judgment which binds them."  *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S.

32, 42-43 (1940)).  The adequacy requirement is met where the class representative: (1) has

common, and not antagonistic, interests with unnamed class members, and (2) will vigorously

prosecute the interests of the class through qualified counsel.  *Amchem Products, Inc. v. Windsor*,

521 U.S. 591, 625 (1997); *Hanlon*, 150 F.3d 1020.

Here, as detailed above, Plaintiffs possess the same type of interests and suffered the same

type of injury as the other Class Members.  In addition, Plaintiffs have prosecuted this matter

1   diligently through their counsel.  Plaintiffs' counsel have extensive experience in class action

2   wage and hour litigation, including federal and state overtime collective and class actions on

3   behalf of technical support workers.  They are well-qualified to be appointed as Class Counsel.

4   Sagafi Decl., ¶¶5-8.

5          Further, Plaintiff's counsel have the ability and resources to vigorously pursue these

6   claims, as set forth in detail in section IV.B.3, below.  Therefore, Plaintiffs should be appointed as

7   Class Representatives of their respective state-law classes.

8                    **2.      The Prerequisites of Rule 23(b) Are Also Satisfied**

9          As the Ninth Circuit holds:

10             To qualify for certification under [Rule 23(b)(3)], a class must
               satisfy two conditions in addition to the Rule 23(a) prerequisites:
11             common questions must "predominate over any questions affecting
               only individual members," and class resolution must be "superior to
12             other available methods for the fair and efficient adjudication of the
               controversy."
13
    *Hanlon*, 150 F.3d at 1022 (quoting Fed. R. Civ. P. 23(b)(3)).  Here, the requirements of
14
    Rule 23(b)(3) are satisfied.[3]
15
                    **a.      Common Questions Predominate Over Any Individual Issues**
16

17         "The Rule 23(a)(3) predominance inquiry tests whether proposed classes are sufficiently

18   cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022.  It focuses on the

19   "relationship between the common and individual issues." *Id.*  "When common questions present

20   a significant aspect of the case and they can be resolved for all members of the class in a single

21   adjudication, there is clear justification for handling the dispute on a representative rather than on

22   an individual basis." *Id*. (quoting 7A Wright, Miller & Kane, *Fed. Prac. & Proc.* § 1778 (2d ed.

23   1986)).

24         In this case, AT&T's liability centers on the company's alleged misclassification of the

25   Class Members.  As detailed above, the resolution of Plaintiffs' class claims will require

26   _____

    [3] Since this motion is made in connection with a proposed class settlement, it is unnecessary to
27   address or decide the fourth consideration contained in Rule 23(b)(3)—"manageability" of a
    trial—since there will be no trial if this settlement is approved. *Amchem*, 521 U.S. at 620.
28

1   resolution of several common issues.  Those common issues will predominate because Plaintiffs

2   and the other Class Members performed substantially similar job duties and were governed by the

3   same AT&T policies and procedures dictating how they performed their job duties.  As a result,

4   the common factual and legal issues raised by the central allegations of misclassification will

5   predominate.  *See Whiteway*, 2006 WL 2642528, at *10; *Tierno v. Rite Aid Corp.*, No. C 05-

6   02520 TEH, 2006 WL 2535056, 2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006);

7   *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001); *Damassia v. Duane*

8   *Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008); *Heffelfinger v. Elec. Data Sys. Corp.*, No. CV 07-

9   00101 MMM, 2008 U.S. Dist. LEXIS 5296, at *92 (C.D. Cal. Jan. 7, 2008).  Furthermore, as set

10  forth above, there are multiple common questions regarding damages applicable to all Class

11  Members' claims, further supporting a finding of predominance.

### b. A Class Action is the Superior Mechanism to Efficiently Resolve this Controversy

14  Rule 23(a)(3)'s final requirement is that "resolution of the issues on a class wide basis [be]

15  superior to other methods available for the fair and efficient adjudication of the controversy."

16  *Tierno*, 2006 WL 2535056, at *11.  This requirement is satisfied because "there is no indication

17  that class members seek to individually control their cases, that individual litigation is already

18  pending in other forums, or that this particular forum is undesirable for any reason."  *Id.* at *11.

19  Furthermore, Class Members likely lack the resources or incentives to secure experienced,

20  qualified counsel or to see litigation through to completion on their own.  In addition, individual

21  lawsuits from hundreds of individuals would be wasteful and inefficient.  *See, e.g., Whiteway*,

22  2006 WL 2642528 at *11.  Accordingly, certification of this settlement class is superior to any

23  other method of resolving this matter, as it will promote economy, expediency, and efficiency.

### 3. Rule 23(g) is satisfied.

25  Rule 23(g) requires a court that certifies a class to appoint class counsel, taking into

26  consideration four factors: (i) the work counsel has done in identifying or investigating potential

27  claims in the action; (ii) counsel's experience in handling class actions, other complex litigation,

28  and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and

1    (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

2         The proposed Class Counsel satisfy these criteria.  First, Counsel have conducted

3    extensive investigation of this case, reviewing over 1,000 pages of documents produced by

4    AT&T, reviewing detailed data on potential class members, and interviewing approximately one

5    hundred Class Members regarding their job duties and overtime hours.  Sagafi Decl., ¶13.

6    Second, Class Counsel have vast experience in prosecuting and litigating large-scale wage and

7    hour collective and class actions such as this.  *Id.*, ¶¶6-9.  Third, Class Counsel have extensive

8    knowledge of this area of the law, having prosecuted several misclassification actions on behalf

9    of similar technical support workers in the past.  Fourth, Class Counsel have the resources to

10   effectively prosecute the Action.  *Id.*, ¶17.

11        **C.**    **The FLSA Class Satisfies 29 U.S.C. § 216(b)**

12        This case is also appropriate for certification under the FLSA, 29 U.S.C. § 216(b).  Under

13   the FLSA, an action may be maintained by an employee or employees on behalf of others who

14   are "similarly situated."  29 U.S.C. § 216(b).  Courts follow a two-phase approach for

15   determining whether an FLSA action meets the "similarly situated" standard.  *See, e.g.,*

16   *Gerlach v. Wells Fargo & Co.*, No. 05-0585, 2006 WL 824652, at *1 (N.D. Cal. March 28, 2006)

17   (quoting 29 U.S.C. § 216(b)).  In the initial, "conditional" certification phase, the "similarly

18   situated" standard is more permissive than Rule 23 and requires only that the named Plaintiffs

19   make a "modest factual showing sufficient to demonstrate that [they] and potential plaintiffs

20   together were victims of a common policy or plan that violated the law."  *Scholtisek v. Eldre*

21   *Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005).

22        Here, the Class Members are similarly situated for purposes of conditional certification of

23   a collective action under the FLSA, 29 U.S.C. § 216(b).  Plaintiffs and Class Members engaged in

24   the same basic job duties.  Plaintiffs have alleged and amassed evidence that AT&T has a

25   common practice of misclassifying Class Members as exempt from overtime pay requirements

26   and refusing to provide compensation and benefit credits for overtime hours.  SAC, ¶¶8-23.

27   Accordingly, conditional certification of settlement classes under 29 U.S.C. § 216(b) is

28   appropriate.

**D.      The Settlement Is Non-Collusive And Falls Well Within The Range of Possible Judicial Approval**

A class action shall not be dismissed or compromised without the approval of the court. Fed. R. Civ. P. 23(e).  Such approval involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted.  *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

At the preliminary approval stage—the present stage in this matter—the court need only "determine whether the proposed settlement is within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (internal citations and quotations omitted).  In other words, because the court cannot fully assess a settlement prior to providing class members notice of the settlement and the opportunity to present objections, the court's first-stage analysis consists of a review for "obvious deficiencies."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

To grant preliminary approval of the Settlement, the Court must find only that it is non-collusive and within the range of possible final approval.  *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079-80 (N.D. Cal. 2007); *see also* Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*, § 11.41 (4th ed. 2006).  This is a minimal standard.

As long as "preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval," the Court should preliminarily approve the settlement.  *In re Vitamins Antitrust Litig.*, No. 99-197, 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (quoting *Manual for Complex Litigation, Third*, § 30.41 (Federal Judicial Center 1995)). The Court may also direct the giving of notice to the Class Members of a final approval hearing, "at which arguments and evidence may be presented in support of and in opposition to the settlement." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002) (quoting

1   *Manual for Complex Litigation, Third*, § 30.41); 4 Newberg, § 11.25 (quoting same).[4]

2        Here, the Parties negotiated the proposed Settlement in good faith and at arms' length.

3   Sagafi Decl., ¶¶18-19.  As noted above, investigation and discovery has allowed Class

4   Counsel—who are very experienced wage and hour collective and class action attorneys—to

5   assess the strengths and weaknesses of the claims against AT&T and the benefits of the

6   Settlement under the circumstances of this case.  Sagafi Decl., ¶¶11-20.  Class Counsel believe

7   that the settlement is fair, reasonable, and adequate and is in the best interest of the Class

8   Members in light of all known facts and circumstances, including the risk of significant delay and

9   Defendant's asserted defenses.  *Id.*, ¶20.

10   **IV.**    <u>**THE PROPOSED NOTICE SATISFIES DUE PROCESS**</u>

11        Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class

12   members who would be bound by a proposed settlement."  Fed. R. Civ. P. 23(e)(1)(B).  The

13   notice standard is satisfied here.[5]

14        The notice provided to members of a class certified under Rule 23(b)(3) must be the "best

15   notice practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  Notice is satisfactory

16   "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse

17   viewpoints to investigate and to come forward and be heard."  *Churchill Village, L.L.C. v.*

18   *General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted).  Notice mailed to

19   each class member "who can be identified through reasonable effort" constitutes reasonable

20   notice.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).  For any class certified under

21   Rule 23(b)(3), the notice must inform class members "that the court will exclude from the class

22   any member who requests exclusion, stating when and how members may elect to be excluded."

23   Fed. R. Civ. P. 23(c)(2)(B).

24   [4] The Fourth edition of the *Manual for Complex Litigation*, released in 2004, does not include this precise language, but instead suggests that if a court has "reservations" about any of the issues

25   described, it should "raise questions . . . and perhaps seek an independent review."  *Manual Fourth* § 21.632.  The end result is the same.

26   [5] Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), after the filing of this motion, AT&T will send the required notice of the Settlement to the Attorney General of

27   the United States and the appropriate state officials (*see* Settlement, § V.I., Exh. E), and will file a declaration of compliance with CAFA prior to the hearing on the motion.

28

1        Here, the form of the manner of dissemination of the Class Notice and Claim Form are

2    consistent with modern best practices recently set forth by the Federal Judicial Center and

3    negotiated and agreed upon by all counsel.  Settlement, Exs. A-B.  The notice will inform Class

4    Members of, among other things, (1) the nature of this action, the Settlement Class, Class

5    Counsel, and the essential terms of the Settlement; (2) the allocation of the Settlement fund,

6    including the calculation of each Class Member's settlement share, the requests for the Class

7    Representative Service Payments and the Class Counsel Attorneys' Fees and Costs Payment, and

8    the other payments that will be deducted from the Settlement fund; (3) how to participate in the

9    Settlement; (4) how to opt out of the Settlement; (5) how to comment on or object to the

10   Settlement; (6) this Court's procedures for final approval of the Settlement; and (6) how to obtain

11   additional information regarding this action and the Settlement.  The notice is written in plain

12   English and is organized and formatted so as to be as clear as possible.  It is based on one of the

13   model notice forms provided by the Federal Judicial Center on its website.  The notice

14   encourages Class Members to contact the Settlement Administrator with any questions, and

15   provides Class Counsel's and the Settlement Administrator's telephone, mail, e-mail, and web

16   contact information.[6]

17       The Parties propose that within 40 days of the entry of an order granting this motion, the

18   Settlement Administrator[7] will mail the class notice to the last known address of each Class

19   Member from AT&T's records or the updated address from the National Change of Address

20   database.  Settlement, § VII.B.  Notice will be sent both by e-mail (where non-AT&T-work e-

21   mail addresses are available) and by first-class mail.  The Settlement Administrator will take all

22   reasonable steps to obtain the correct address of any Class Members for whom the notice is

23   returned by the post office as undeliverable and otherwise to provide the Class Notice.  *Id.*  Due

24

---

[6] The website listed in the notice has been maintained by Class Counsel throughout the litigation
and has enabled Class Counsel to keep Class Members updated as to the progress of the litigation.
Class Counsel will continue to use this tool to ensure that Class Members understand the notice
process and submit Claim Forms to receive their Settlement Shares, should they wish to do so.
[7] The Parties propose that Settlement Services, Inc., an experienced class action administrator,
serve as Settlement Administrator.  Counsel for both parties have used this administrator in past
wage and hour class action settlements and litigation.

25

26

27

28

NOTICE OF MOTION AND MOTION FOR
PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. C10-00463-LHK

1    to the accuracy of AT&T's records, the moderate size of the class, and the obligations imposed on

2    the Settlement Administrator by the Settlement, the Parties believe that there is no need for

3    publication notice.  Sagafi Decl., ¶21.

4          The Parties propose that, under the notice plan outlined above, the Class Members will

5    have 60 days after the notice is mailed to submit Claim Forms, comment or object to the

6    Settlement, and/or opt out of the Settlement.  Settlement, § VII.D.  Approximately 30 days prior

7    to the expiration of the 60-day deadline, the Settlement Administrator will mail a reminder

8    postcard to all Class Members who have not by then submitted a completed Claim Form or an

9    Opt-Out Request.  Settlement, § VII.E.1.  Additionally, approximately 20 and 10 days prior to

10   that deadline, the Settlement Administrator will contact all Class Members who have not by then

11   submitted a completed Claim Form or an Opt-Out Request to remind them to participate.

12   Settlement, § VII.E.1.  These repeated reminders will ensure that Class Members are fully aware

13   of their rights and options.

14         The foregoing notice plan provides the best notice practicable under the circumstances

15   and will provide Class Members a full and fair opportunity to consider the terms of the proposed

16   Agreement and make a fully informed decision on whether to participate, to object, or to opt out

17   of the Settlement.

18

19

20

21

22

23

24

25

26

27

28

## V.   PROPOSED SCHEDULING ORDER

The following schedule sets forth a proposed sequence for the relevant dates and deadlines, assuming the Court preliminarily approves the Settlement on February 17, 2011.

| Event | Time Limits According to Agreement | Date |
|---|---|---|
| Deadline to mail Class Notice to Class | Within 40 days after date of Preliminary Approval Order | March 29, 2011 |
| Deadline to file Motion for Class Counsel Costs & Fees and for approval of Class Representative Service Payments | 14 days before objection deadline | May 17, 2011 |
| Deadline for submission of Claim Forms, Opt Out Requests, and comments or objections | Within 60 days after the Claims Administrator mails the Class Notice | May 31, 2011[8] |
| Deadline to file Motion for Final Approval | 14 days prior to Fairness Hearing | June 16, 2011 |
| Fairness Hearing | | June 30, 2011, 1:30 p.m. |

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court (1) conditionally certify the proposed settlement class under Fed. R. Civ. P. 23; (2) conditionally designate the action as a collective action under the FLSA; (3) appoint Plaintiffs as the Class Representative for the Settlement Class; (4) appoint Plaintiffs' counsel as Class Counsel for the Settlement Class; (5) grant preliminary approval to the parties' Settlement; (6) approve the mailing of the proposed Class Notice; (7) approve the notice of the Settlement sent to the Attorney General of the United States and the responsible state officials; (8) appoint Settlement Services, Inc., as the Settlement Administrator; and (9) schedule a final approval hearing for Thursday, June 30, 2011, at 1:30 p.m.

---

[8] If any deadline for Class Member action falls on a weekend, the deadline shall be extended to the next non-holiday weekday.  (Settlement Agreement, § VII.E.7.)  Therefore, since the 60th day after the estimated mailing of the Class Notice falls on Saturday, May 28, 2011, and the following Monday is Memorial Day, the deadline is extended to Tuesday, May 31, 2011.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  January 13, 2011

By:   */s/ Jahan C. Sagafi*
       Jahan C. Sagafi

Kelly M. Dermody (Cal. Bar No. 171716)
Jahan C. Sagafi (Cal. Bar No. 224887)
Anne B. Shaver (Cal. Bar No. 255928)
Jaron R. Shipp (Cal. Bar No. 264401)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008
E-Mail: kdermody@lchb.com
E-Mail: jsagafi@lchb.com
E-Mail: ashaver@lchb.com
E-Mail: jshipp@lchb.com

Adam T. Klein (admitted *pro hac vice*)
Justin M. Swartz (admitted *pro hac vice*)
Rachel M. Bien (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Fax: (212) 977-4005
E-Mail: atk@outtengolden.com
E-Mail: jms@outtengolden.com
E-Mail: rmb@outtengolden.com

*Attorneys for Plaintiffs and the proposed Class*

- 19 -